IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LAUREN LAW, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | CIVIL ACTION FILE NO. |
| V. ) | |
| ) | _____ |
| CLOROX SERVICES COMPANY, ) | |
| EXEL, INC., AND JIM LANE, ) | |
| ) | |
| DEFENDANTS. ) | JURY TRIAL DEMANDED |
| ) | |
| _____ ) | |

# COMPLAINT

**COMES NOW** Plaintiff, Lauren Law (hereinafter "Plaintiff" or "Law"), by and through her undersigned counsel, and sets forth this Complaint for Damages against the above named Defendants. Corporate Defendant Clorox Services Company (hereinafter "Clorox") is a foreign corporation doing business in the state of Georgia, Corporate Defendant Exel, Inc., (hereinafter "Exel" and with Clorox "Defendant Employers") is a foreign corporation doing business in the state of Georgia, individual defendant Jim Lane (hereinafter "Lane") upon information and belief, lives within this judicial district. Plaintiff respectfully shows this Court as follows:

1

## JURISDICTION

1.

This action is for sex discrimination and retaliation arising under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, et seq. (hereinafter "Title VII") Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory damages, punitive damages and attorney's fees and costs.  The claims herein present a federal question thus jurisdiction is proper before this Court pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.  Plaintiff further invokes pedant jurisdiction of this Court to hear and decide claims arising under the laws of the State of Georgia for assault, negligent retention and negligent supervision.

## VENUE

2.

All parties to this action reside or are located within the boundaries of this judicial district, and venue is proper pursuant to, inter alia, 28 U.S.C. Section 1391(b)(2) and 42 U.S.C. Section 2000e-(f)(3).  Moreover the unlawful employment practices alleged below were committed within the geographic boundaries of the Atlanta Division, Northern District of Georgia, of the United States District Court, within the state of Georgia.

## PARTIES AND JURISDICTION

3.

Plaintiff is a female citizen of the United States, and resides in Georgia.

4.

This Court has personal jurisdiction over Clorox.

5.

Clorox may be served though its registered agent, CT Corporation System, 1201 Peachtree Street, NE, Atlanta, Georgia 30361, if formal service of process is not waived.

6.

This Court has personal jurisdiction over Exel.

7.

Exel may be served though its registered agent, Corporation Process Company, 2180 Satellite Boulevard, Ste. 400, Duluth, Georgia 30097, if formal service of process is not waived.

8.

ThiCourt has personal jurisdiction over Lane.

9.

Lane may be served at his place of employment, 1595 Oakley Industrial, Fairburn, Georgia 30213, if formal service of process is not waived.

## FACTS

10.

Clorox operates a household products production facility in Fairburn, Georgia.

11.

Exel is a professional employer organization and provides personnel to Clorox at the direction of Clorox.

12.

Clorox and Exel are joint employers for purposes of this action, as both controlled the working conditions and terms of employment for Plaintiff.

13.

Clorox employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current and preceding year.

14.

Clorox is subject to the anti-discrimination provisions of Title VII of the Civil Rights Act of 1964, as amended.

15.

Exel employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current and preceding year.

16.

Exel is subject to the anti-discrimination provisions of Title VII of the Civil Rights Act of 1964, as amended.

17.

Plaintiff began working for Defendant Employers on or about April 18, 2011.

18.

Plaintiff was initially hired for the position of quality assurance at a rate of $11.25 per hour.

19.

Around the second week of Plaintiff's employment, Lane, operations manager for Defendant Employers, approached Plaintiff and told her she was doing a great job and that she was a lifesaver.

20.

Lane also told Plaintiff that he was impressed with her job performance.

21.

Shortly afterward, Lane began making unwanted and unwelcome comments of a sexual nature toward Plaintiff on a near daily basis.  Lane frequently told Plaintiff that she looked nice.  On other occasions, Lane would tell Plaintiff that he had trouble sleeping because he had taken a "little blue pill" the prior evening, referring to an erectile dysfunction drug.

22.

Additionally, Lane would engage in unwanted and unwelcome, offensive touching of the Plaintiff without her consent on a frequent, near daily basis.  For example, if Plaintiff wore her hair up on top of her head, Lane would approach Plaintiff and rub her hair.  On other occasions Lane would rub Plaintiff's knees and legs while talking to Plaintiff.

23.

Lane subsequently would get unreasonably close to Plaintiff when telling her about his taking erectile dysfunction drugs, and would suggest that Plaintiff should try some "little blue pills" with him.

24.

On other occasions, Lane would tell Plaintiff that he saw Plaintiff's profile on match.com, a dating website, and that Plaintiff was looking for a sugar daddy

who could help her get breast implants. Plaintiff had no such profile on match.com.

25.

Lane would then leer at Plaintiff's breasts. On some occasions Lane would volunteer that his hobbies on match.com were bull riding and rodeo f*cking, while looking at Plaintiff.

26.

Lane also frequently placed his arms around Plaintiff to shake her and move her close to him.

27.

Lane also began referring to Plaintiff as "corn-fed." When Plaintiff asked what "corn-fed" meant, she was told it meant she "had a healthy butt and curvy figure" while Lane looked her over intently.

28.

Lane clearly communicated that he as interested in a sexual relationship with Plaintiff; however, Plaintiff refused to engage in any type of sexual relationship and would walk away from Lane after he started touching her or making inappropriate sexual comments.

29.

Around July 18, 2011, Plaintiff was told by Lane that she was going to be written up for missing a punch on the time clock.

30.

Plaintiff was surprised, as she knew that she had not missed any punches on the time clock, and told Lane she though there had been an error.

31.

Lane responded that there had actually been two missed punches, but he had no choice but to write Plaintiff up for one of them. Lane then directed Plaintiff to go into an office with him.

32.

Once inside the office, Lane asked Plaintiff what she wanted him to do. Plaintiff understood that Lane was offering to not write her up in exchange for Plaintiff engaging in sexual relations with him.

33.

Plaintiff refused to engage in sexual relations with Lane.

34.

Plaintiff's 90-day review was due approximately the same time that Lane threatened to write Plaintiff up for a missed punch.

35.

Subsequently, Lane informed Plaintiff that he would not be giving her a 90-day review, but had decided she needed to complete another 30 day probationary period.

36.

When Plaintiff asked why her probationary period was being extended, Lane did not give her a reason.  Again, he asked her what she wanted to do, and if she could think of some other solution.  Lane also told Plaintiff that she seemed too uptight, but if she would listen to him she would be successful, but that the conversation was only between the two of them.

37.

As Plaintiff was turning to return to her work, Lane told Plaintiff that he wanted to see a smile on her face when he talked, and implied that Plaintiff's job security was based on her willingness to flirt and have sexual relations with him.

38.

The following Friday, July 22, 2011, Plaintiff complained to human resources that she was being singled out for more harsh treatment and was being sexually harassed.  The human resource manager walked Plaintiff down to Lane's office and then went into Lane's office.

39.

A short period of time later, Lane approached Plaintiff and asked her what size shirt she wore; Plaintiff knew that people who passed the 90-day probationary period were given shirts to wear.  Plaintiff told Lane her shirt size.

40.

A few days later, Lane approached Plaintiff as she was walking toward her desk and told her that something was going on with shipping, and that she needed to get it sorted out; at that time Plaintiff had been working in shipping for the two prior shifts with no training.  Other employees in quality assurance, however, had received up to two months of training for shipping.

41.

Plaintiff continued use her best efforts; subsequently, the network operations manager, Justin Soeder, told Plaintiff that the shipping issues were not her fault; rather there was an error in the system.

42.

When Plaintiff arrived to work on July 27, 2011, Lane told Plaintiff to go into his office.

43.

Another human resources representative was already in Lane's office: Lisa Guyden.  Ms. Guyden  told Plaintiff that she had already talked to the other human resources representative, but never asked Plaintiff about the sexual harassment, assault, or battery that Plaintiff had reported.

44.

Instead, Ms. Guyden allowed Lane to berate Plaintiff for the way Plaintiff filled out some quality assurance checklist forms.  When Plaintiff responded that she was filling out the forms as she had been instructed, Ms. Guyden alleged that Plaintiff had been previously warned on July 11, 2011.

45.

When Plaintiff denied any prior warning, Defendant Lane admitted that the meeting on July 11, 2012, was not about Plaintiff, but wholly unrelated mistakes made by a trainee assigned to Plaintiff.

46.

Ms. Guyden asked Lane if he was sure he wanted to terminate Plaintiff's employment; after Lane affirmed, Plaintiff was told that her final check and a separation notice would be mailed to her and Plaintiff was escorted off the worksite.

**FIRST CAUSE OF ACTION: VIOLATION OF TITLE VII SEXUAL HARASSMENT**

47.

Plaintiff incorporates by reference paragraphs 1-46, above, as if fully set forth herein.

48.

Plaintiff belongs to a protected group (female) as defined by Title VII.

49.

Plaintiff's supervisor, Lane, engaged in unwelcome sexual harassment of Plaintiff as described above.

50.

The harassment of Plaintiff was because of her gender.

51.

This unwelcome sexual harassment was sufficiently severe and/or pervasive as to alter the terms and conditions of Plaintiff's employment and/or to create a hostile and discriminatorily abusive working environment.

52.

Defendant Employers knew or should have known that Lane was engaging in sexual harassment of Plaintiff and Defendant Employers failed to take prompt and appropriate remedial measures to stop the harassment.

53.

As a direct and proximate result of Lane and Defendant Employers' above mentioned discriminatory conduct, Plaintiff suffered lost wages and benefits, significantly diminished employment opportunities and emotional distress.

## SECOND CAUSE OF ACTION: TITLE VII UNLAWFUL RETALIATION

54.

Plaintiff incorporates by reference paragraphs 1-53, above, as if fully set forth herein.

55.

Plaintiff engaged in activities protected under Title VII of the Civil Rights Act of 1962, as amended, in refusing to engage in sexual relations with Lane and making a report of sexual harassment on or around July 22, 2011.

56.

After Plaintiff's complaints, Plaintiff suffered adverse employment actions including but not limited to termination.

57.

As a direct and proximate result of Defendant Employers' retaliatory conduct towards Plaintiff, Plaintiff suffered lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

## THIRD AND FOURTH CAUSES OF ACTION: ASSAULT AND BATTERY

58.

Plaintiff incorporates by reference paragraphs 1-57, above, as if fully set forth herein.

59.

Plaintiff endured actions that led her to reasonably anticipate and fear that Lane would engage in unwanted touching and sexual conduct toward the Plaintiff which was unwelcome and without the consent of the Plaintiff such as rubbing Plaintiff's knees and legs or head.

60.

Lane engaged in repeated unwanted, offensive physical contact with Plaintiff which was offensive, unwelcome, and without the consent of the Plaintiff.

61.

Based on its actual and constructive knowledge of Lane's misconduct and propensity for such misconduct, combined with their failure to intercede on Plaintiff's behalf, Defendant Employers condoned, adopted, and ratified Lane's conduct, making Defendant Employers responsible for the assault on Plaintiff.

62.

Based on its actual and constructive knowledge of Lane's misconduct and propensity for such misconduct, combined with their failure to intercede on Plaintiff's behalf, Defendant Employers condoned, adopted, and ratified Lane's conduct, making Defendant Employers responsible for the battery on Plaintiff.

63.

Defendant Employers' refusal to discipline their employees, including Lane, and to take actions to prevent the assault of Plaintiff makes Defendant Employers independently liable for the assault and battery of Plaintiff.

### **FOURTH CAUSE OF ACTION: NEGLIGENT SUPERVISION/ RETENTION**

64.

Plaintiff incorporates by reference paragraphs 1-63, above, as if fully set forth herein.

65.

Defendant Employers knew that Lane had a propensity toward or a history of sexual harassment. However, Defendant Employers failed to take prompt and appropriate remedial steps to protect Plaintiff from Lane's sexual harassment.

66.

Further, after Defendant Employers had actual notice of Plaintiff being sexually harassed by Lane, Defendant Employers failed to monitor and protect Plaintiff from retaliation.

67.

As a result of Defendant Employers' negligent retention and/or supervision, Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

WHEREFORE, Plaintiff demands a trial by jury and for the following relief:

(a) that Summons issue;

(b) that Defendant Employers and Lane be served with Summons and Complaint;

(c) that trial by jury of all issues be had;

(d) that judgment be issued against the Defendants for any and all general, special, and where applicable, punitive damages as allowed by law under each and every count and cause of action contained in this Complaint;

(e) for injunctive relief;

(f) for all costs of this action to be taxed against the Defendants;

(g) for all costs and attorneys fees to be awarded to Plaintiff; and,

(h) for any and all other further relief as this Court may deem just and equitable under the circumstances.

Respectfully submitted this 22nd day of June, 2012.

<u>/s/ J. Stephen Mixon</u>
J. Stephen Mixon
Attorney for Plaintiff
Georgia Bar No. 514050

MILLAR & MIXON, LLC
108 Williamson Mill Rd.
Jonesboro, Georgia 30236
T: 770-955-0100
F: 678-669-2037
steve@mixon-law.com